# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                                Case No. 09-CR-315

**IDELFONSO GARIBAY**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Idelfonso Garibay pleaded guilty to misprision of a felony, contrary to 18 U.S.C. § 4, and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

## I. GUIDELINES

In the present case, the parties agreed with the guidelines set forth in the PSR: base level 17 under U.S.S.G. § 2X4.1,[1] minus 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final offense level of 14; criminal history category III; and an imprisonment range of 21 to 27 months. I found these calculations correct and adopted them accordingly.

---

[1] In a misprision case, the base offense level is set 9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19. Here, the parties agreed that the underlying drug offense produced a base level of 26.

## II. SECTION 3553(a)

**A.    Sentencing Factors**

In determining the sentence, the district court considers:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id.  While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009).  Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences available, the relevant §

2

3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50; see also Pepper v. United States, 131 S. Ct. 1229, 1241 (2011) ("[A]lthough the 'Guidelines should be the starting point and the initial benchmark,' district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.'") (quoting Gall, 552 U.S. at 49-51).

**B.    Analysis**

    **1.    The Offense**

In September of 2009, a confidential source ("CS") advised law enforcement that he had been receiving large amounts of cocaine from Luis Garibay Gonzalez, a relative of this defendant. In October 2009, at the direction of law enforcement, the CS placed a recorded call to Gonzalez regarding a drug debt and arranged to make a partial payment of $2000 towards the amount owed. On October 6, 2009, the CS completed a controlled delivery of the payment to Gonzalez, who was accompanied by defendant. Shortly thereafter, agents conducted a traffic stop of the defendants' vehicle and recovered the $2000.

The following month, the CS made more recorded calls to Gonzalez, arranging to deliver another payment and asking Gonzalez to bring 4 ounces of cocaine. On November 12, 2009, Gonzalez and defendant met with the CS, the CS delivered $1000 to Gonzalez, and Gonzalez provided the CS with about 100 grams of cocaine.

On November 17, 2009, under the control and direction of agents, the CS met with Gonzalez, who was again accompanied by defendant, and paid Gonzalez $4000 for the 100 grams; at that time, Gonzalez also delivered another 194 grams of cocaine to the CS. During this encounter, which was recorded, defendant advised Gonzalez not to complete the deal

3

because of all the cars in front of the CS's residence. Defendant also commented that Gonzalez was so persistent about getting money that he didn't use good judgment.

On December 4, 2009, again under the direction and control of agents, the CS delivered $2000 to Gonzalez, again accompanied by defendant, as a payment. On December 15, the CS met with Gonzalez and defendant to receive 9 ounces of cocaine and 10 pounds of marijuana, and to deliver $9000 for the cocaine he had previously received. Gonzalez explained that he didn't have the drugs yet, but that he could get 18 ounces that night or a kilogram the next day. Shortly thereafter, the police arrived and arrested the defendants. Defendant had several thousand dollars in cash on him at the time.[2]

The parties agreed that, while Gonzalez dealt cocaine for an extended period, defendant did not join the activity until the fall of 2009. The parties also agreed that defendant should be held responsible for about 546 grams of cocaine. This case resolved via a plea to misprision of a felony, which was supported by defendant's knowledge of Gonzalez's drug trafficking activities, and his concealment and failure to make known the same to the authorities.

**2.     The Defendant**

Born in Mexico in 1973, defendant came to the United States at the age of fourteen, moving in with a sister in Chicago. Starting in his teens, defendant steadily worked, holding several long-term, full-time jobs in the Chicago-area, as discussed in ¶¶ 78-80 of the PSR. In 1994, he became a conditional permanent resident, and in 1996 a lawful permanent

---

[2]A second CS, who worked with the first, confirmed that they received substantial amounts of cocaine from Gonzales, and that defendant was Gonzalez's business associate.

resident.[3]

Defendant married in 1992 and had two children with his wife. However, after several years the marriage began to fall apart, and defendant was convicted of several offenses related to excessive drinking and domestic discord – drunk driving in 1998 and 2001; criminal damage to property, trespass, and disorderly conduct in 2002; and violation of a domestic order in 2002.

Defendant moved to Milwaukee in 2002 and obtained a job at Patrick Cudahy in 2003, which he held until he was laid off in 2009 after a fire at the company. Defendant's wife was imprisoned in 2003, and defendant thereafter raised their children alone until they reached adulthood. Defendant had another child in 2006, and although his relationship with the mother ended, they remained amicable, and he shared joint custody of the boy. His only contact with the law after moving to Wisconsin was a 2008 municipal retail theft case.

Unfortunately, after losing his job in 2009, defendant started hanging out with Gonzalez and assisting in Gonzalez's drug trafficking. He was arrested in late 2009 and released on bond. After a positive test for cocaine in March 2010, he was referred by pre-trial services for out-patient drug and alcohol treatment at Genesis, the first time he had ever received such treatment. The PSR reported that since the positive test defendant fully complied with treatment, with his counselor indicating that he made excellent progress, as well as his other bond conditions.

In September 2010, defendant started volunteering at the United Community Center ("UCC"), and a letter from the center described him as a passionate young man, extremely dedicated to the south side community in Milwaukee. He worked at the senior center as a

---

[3]It was unclear whether and how that status would be affected by his conviction in this case.

5

program assistant, distributing food, washing dishes, and assisting with clerical duties. The letter praised his work ethic and indicated that he was always on time, followed directions, and was culturally sensitive. Shortly before sentencing, the UCC hired defendant as a full-time employee. I found these circumstances, where a defendant facing prison time was motivated to volunteer – and performed so well that he was hired full-time – unusual.

### 3. The Sentence

The guidelines called for a term of 21-27 months in prison, and the government recommended a period of imprisonment. The offense conduct, viewed in isolation, suggested a prison sentence in order to reflect the seriousness of the crime and deter others from engaging in this type of activity. Gonzalez distributed a substantial quantity of cocaine, and the amounts he handled while defendant accompanied him were also significant. The nature of defendant's specific conduct was accompanying Gonzalez in deliveries of cocaine and collecting money, so his conduct was not aggravated, but the guidelines accounted for defendant's lesser involvement with the 9 level reduction under U.S.S.G. § 2X4.1.

However, as the Supreme Court recently re-affirmed, the sentencing judge must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" Pepper, 131 S. Ct. at 1239-40 (quoting Koon v. United States, 518 U.S. 81, 113 (1996)). In other words, "'the punishment should fit the offender and not merely the crime.'" Id, at 1240 (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). For several reasons, I found a probationary sentence sufficient to satisfy the purposes of sentencing.

First, I noted defendant's highly positive conduct over the past year, volunteering, abstaining from drug use, excelling in treatment, and caring for his child. By all accounts, he

was a good father to his five year old son. This is the type of progress a court should encourage when possible. Defendant's solid work record suggested that he could be a contributor to society.

Second, I found that the guideline range somewhat overstated the severity of defendant's record and the risk he posed to the public. His criminal history was relatively minor and somewhat dated; only his municipal retail theft conviction occurred within the past nine years. The Sentencing Commission has acknowledged that a downward departure from the defendant's criminal history category may be warranted if, for example, the defendant has minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. See U.S.S.G. § 4A1.3 cmt. n.3. That essentially described defendant's situation; only a municipal retail theft between 2002 and 2009. I further noted that most of defendant's convictions occurred during the dissolution of his marriage, a time when he was also drinking heavily. Given his excellent performance in treatment, I found him unlikely to return to substance abuse and the type of criminality in which he engaged when drinking.

Third, imposing a probationary sentence permitted me to retain a degree of control over defendant for a longer period of time, as probationary sentences may last up to 5 years; supervised release following a prison sentence is, under 18 U.S.C. § 4, limited to just 1 year. In order to provide a measure of punishment and deterrence, I included a condition of 180 days of home confinement.

### IV. CONCLUSION

For the reasons stated herein and on the record, I placed defendant on probation for a period of 3 years, with a condition of 180 days of home confinement. I found this term

sufficient to ensure monitoring, treatment, and legitimate employment. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 26th day of May, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge